**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC | ) | MDL-_____ |
| ASSOCIATION ATHLETIC GRANT-IN-AID | ) | |
| ANTITRUST LITIGATION | ) | |
| _____ | ) | |

**BRIEF IN SUPPORT OF MOTION OF PLAINTIFF FOR TRANSFER OF ACTIONS TO
THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407
FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## I.  INTRODUCTION

As of the date of this motion, two putative class action lawsuits have been filed by plaintiffs who are current or former college athletes at National Collegiate Athletic Association ("NCAA") member universities, and whose scholarships and other forms of financial remuneration were limited by the athletic grant-in-aid cap imposed by Defendants NCAA, and its most powerful athletic conference members, Defendants The Pacific 12 Conference, The Big Ten Conference, Inc., The Big Twelve Conference, Inc., the Southeastern Conference, and the Atlantic Coast Conference.  *See* Schedule of Actions, filed herewith.  The first of those actions was filed in the Northern District of California, and another has been filed in the District of New Jersey.  These lawsuits arise out of a common nucleus of operative facts and contain substantially similar factual allegations and legal claims.  Plaintiff Shawne Alston believes that consolidation of these related actions in the Northern District of California is appropriate under 28 U.S.C. § 1407 because it will serve the convenience of the parties and witnesses, and promote the just, fair, and efficient conduct of this litigation.

Plaintiff Alston submits that the Northern District of California is the appropriate forum for coordination or consolidation of all the related actions in this matter, and that the related actions not pending in that district should be transferred there, for the following reasons:

- Chief Judge Claudia Wilken, the Judge assigned to the case in the Northern District of California, is particularly well suited to handle this case. Chief Judge Wilken currently has no other MDL pending before her. However, she does have consolidated and related NCAA class action cases pending before her, *Keller v. Electronic Arts Inc. Et al*, Case No. 09-01967 CW (N.D. Cal.) and *O'Bannon v. National Collegiate Athletic Ass'n* , Nos. C 09–3329 CW, C 09–4882 CW (N.D. Cal.), and she has related the *Alston* action to those cases. The related cases may involve similar questions of fact and law and are very likely to involve similar defenses from the NCAA. Chief Judge Wilken's experience over the past five years with *Keller* and *O'Bannon* will eliminate any learning curve, and give her a wealth of pre-existing knowledge and experience in dealing with the issues presented by this litigation.

- Defendant The Pacific Twelve Conference has its primary place of business in the Northern District of California, in Walnut Creek, within 15 minutes of Chief Judge Wilken's Oakland courthouse;

- The Northern District of California is easily accessible to all parties, and well served by three major airports within the District.

## II.  STATEMENT OF FACTS

On March 5, 2014, Plaintiff Shawne Alston ("Alston") filed a putative class action complaint (the "Complaint") in the Northern District of California on behalf of certain current or former college athletes at NCAA member universities whose athletic scholarships and other forms of financial remuneration were limited by the athletic grant-in-aid cap imposed by Defendants NCAA, The Pacific 12 Conference, The Big Ten Conference, Inc., The Big Twelve Conference, Inc., the Southeastern Conference, and the Atlantic Coast Conference (the "Class" or "Class Members"). Specifically, Plaintiff Alston brought claims on behalf of all persons who received athletic grants-in-aid for participation in college football from a college or university that is a member of the five above-mentioned NCAA conferences at any time between four years prior to the filing of the Complaint, and the date of judgment in this matter. *See Alston v. National Collegiate Athletic*

*Association.*, et al, 4:14-cv-01011-CW, (complaint attached hereto as Exhibit 1 to the Schedule of Actions).

Plaintiff Alston brought his class action litigation against the NCAA and the five most powerful football conferences, claiming that these entities have unlawfully agreed in violation of federal antitrust laws to cap the value of athletic grant-in-aids. Plaintiff contends that the NCAA's cap on the value of athletic scholarships is far below the actual cost of attending school, and even further below what the free market would bear. Plaintiff and the putative class seek past damages for the difference between the capped amount of an athletic grant-in-aid and the true cost of attending school. Plaintiff also seeks an injunction barring the NCAA from enforcing the athletic grant-in-aid cap.

**A.     Other Cases**

One other putative class action complaint has been filed on behalf of current or former college athletes attending NCAA universities whose scholarships and other forms of financial remuneration were limited by the grant-in-aid cap imposed by the NCAA, and its members The Pacific 12 Conference, The Big Ten Conference, Inc., The Big Twelve Conference, Inc., the Southeastern Conference, and the Atlantic Coast Conference. *See Jenkins et al v. National Collegiate Athletic Association, et al*, Case No. 3:14-cv-01678-FLW-LHG (D. N.J.). The allegations in the *Jenkins* case are substantially similar to those in the *Alston* complaint, particularly in regards to the injunctive relief sought in both actions.

### III.  ARGUMENT

**A.**  **Transfer of the NCAA Athletic Grant-In-Aid Antitrust Litigation actions for Coordination and Consolidation is Appropriate Under 28 U.S.C. § 1407**

The Panel should transfer and consolidate these cases in a single district because:  (1) the actions involve numerous common questions of fact and law, and (2) consolidation will convenience the parties and witnesses, and will promote the just and efficient conduct of this litigation.  *See* 28 U.S.C. § 1407(a).

### 1.  **These Actions Involve Multiple Common Questions of Fact and Law**

When multiple actions pending in different districts contain one or more common questions of fact, such actions may be coordinated or consolidated in one district for pretrial proceedings.  *See* 28 U.S.C. § 1407(a).  The NCAA Athletic Grant-in-Aid class actions share multiple common questions of fact and law, including but not limited to:

> a.  whether Section 1 of the Sherman Antitrust Act was violated by Defendants' conduct;
>
> b.  whether a *per se* or quick look analysis is appropriate under the Sherman Antitrust Act;
>
> c.  whether Defendants conspired to impose a limit on athletic grants-in-aid that Plaintiffs could receive as college athletes;
>
> d.  whether class action treatment is appropriate;
>
> e.  whether injunctive relief is appropriate; and

These common issues give the Panel the authority to order the transfer, consolidation, and coordination of these actions to a single judicial district.  *See, e.g., In re Cement & Concrete Antitrust Litig.,* 437 F. Supp. 750 (J.P.M.L. 1977) (ordering transfer and consolidation of cases upon

a finding of common questions of fact concerning the existence and scope of an antitrust conspiracy).

**2.      Consolidation in a Single Judicial District Will Convenience the Parties and Witnesses in the Related Actions and Promote the Just and Efficient Conduct of the Related Actions**

Centralization under 28 U.S.C. § 1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005).  Without transfer and consolidation of these related actions, the Northern District of California, the District of New Jersey, and any other courts in which subsequent tag-along actions are filed, will each have to make separate inquiries into a substantially similar set of facts involving virtually the same parties and witnesses. These overlapping factual inquiries would certainly inconvenience the parties and the witnesses as they will be forced to make appearances in both venues to resolve the same issues.

Maintaining the actions in separate districts is also likely to result in uncertainty among the parties and witnesses who may be subjected to multiple rulings and protocols regarding the same factual and legal issues.  Under these circumstances, coordination and consolidation of these cases into a single judicial district will convenience the parties by: (1) streamlining discovery; (2) preventing duplicative discovery requests and depositions; (3) preventing duplicative court appearances; and (4) sparing the parties and witnesses the expense and inconvenience of participating in litigation in the District of New Jersey, and any other judicial districts where subsequent related actions may be filed.

Furthermore, transfer and consolidation of the actions in a single district is in the interest of justice because it will prevent the possibility of multiple inconsistent rulings on the common factual and legal issues in the related actions, including injunctive relief.

**B.** **These Actions Should be Consolidated in the Northern District of California**

In choosing a transferee forum, the Panel considers which judicial district is best suited to promote the purpose of 28 U.S.C. § 1407 in ensuring convenience of the parties and the just and efficient conduct of the litigation. In this case, each of these considerations favors transfer to the Northern District of California because: (1) there is a strong nexus between the Northern District of California and the parties to the current litigation; (2) the Northern District of California is the most convenient forum for the parties and witnesses in this matter; and (3) the Northern District of California has the judicial resources and expertise to efficiently manage this antitrust litigation.

**1.** **Strong Nexus Between the Northern District of California and the Parties to the Current Litigation**

When making its determination whether to consolidate cases pursuant to 28 U.S.C. § 1407, the Panel often considers whether there is a nexus between the parties to the litigation and a particular transferee forum. A nexus will exist where key facilities are located. *See In re Guidant Corp. Implantable Defibrillators Prods. Liability Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005). These facilities will be "where many relevant documents and witnesses are likely to be found." *In re Delphi Corp. Sec., Derivative and "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005).

Defendant The Pacific Twelve Conference has its principal place of business at 1350 Treat Boulevard, Suite 500, Walnut Creek, California. The Pacific Twelve Conference is home to twelve different universities with collectively thousands of student-athletes who are likely class members. Relevant documents and witnesses will certainly be found at the facilities in Walnut Creek. Additionally, many potential witnesses, such as current and former college athletes from local Pacific Twelve Conference universities reside in the Northern District of California. The Northern District of California is home to two Pacific Twelve Schools: the University of California ("Cal")

and Stanford University, and would be the most likely location for many witnesses. Other Defendants have already employed local counsel in San Francisco, including the Atlantic Coast Conference (represented by Holland & Knight attorneys in San Francisco). *See In re Allegheny Energy, Inc. Sec. Litig.*, 259 F. Supp. 2d 1368, 1369 (J.P.M.L. 2003) (the Northern District of California was an appropriate transferee forum because the corporate defendant and most of the individual defendants resided there, and the district was likely to be the location of significant discovery activity). Therefore, a strong nexus exists between these defendants and the Northern District of California.

2.      **The Northern District of California is the Most Convenient Forum**

The Panel considers which district is the most convenient for the parties and witnesses when deciding where to transfer an MDL action. *See* 28 U.S.C. § 1407(a) (transfers shall be made by the Panel based upon its determination that such transfers "will be for the convenience of parties and witnesses…"). The Northern District of California is located in an area with an abundance of hotels, taxis, rental cars, and other necessary litigation resources. San Francisco International Airport, Oakland International Airport, and Mineta San Jose International Airport service the Northern District of California, making it easily accessible to all parties. Further, Defendant The Pacific Twelve Conference is located in Walnut Creek, within an hour drive of each of the Northern District's Courts. In addition, as stated above, it is likely that witnesses from the Pacific Twelve Conference, as well as from Cal and Stanford, two of its member universities, will be essential to the prosecution of this case.

3.      **The Northern District of California has the Judicial Resources and Expertise to Efficiently Manage This Litigation**

The Northern District of California has handled countless complex MDL proceedings. The Northern District Judges are not only extremely competent, but have a wealth of experience handling

some of the world's most complex proceedings, such as antitrust and securities actions, and are very familiar with the intricacies of complex suits involving antitrust issues. *See, e.g.*, *In Re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, No. 4:02-md-01486 (N.D. Cal. 2002) (Hamilton, J.); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 3:07-md-1827 (N.D. Cal. 2007) (Illston, J.); *In re Methionine Antitrust Litig.*, No. 00-1311 (N.D. Cal. 2000) (Breyer, J.); *In re Informix Corp. Sec. Litig.*, No. 97-1289 (N.D. Cal. 1997) (Breyer, J.); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 98-4886 (N.D. Cal. 1998) (Legge, J.); *Meijer v. Abbott Laboratories*, C-07-05985 (N.D. Cal. 2007) (Wilken, J.); and *In re: Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (N.D. Cal. 2013) (Gonzalez Rogers, J.).

While both courts are very capable, the Northern District of California is better suited to handle this case when compared to the District of New Jersey. The District of New Jersey as a whole has 18 pending MDL actions, compared to only 15 for the Northern District of California, despite the fact that the each Court has 24 active judges. *See* MDL Statistics Report – Distribution of Pending MDL Dockets (Report Date: 3/13/2014), *available at* http://www.jpml.uscourts.gov /sites/jpml/files/PendingMDL_Dockets_By_District-March-13-2014.pdf. Moreover, no less than five new judges have been added to the Northern District bench since 2013, including three this year (2013: Judges Tigar and Orrick; 2014: Judges Donato, Freeman and Chhabria). As a result, the case load for Chief Judge Wilken and other judges in the Northern District of California may soon drop. Even before the addition of these three judges, the Northern District of California was the more

efficient district in handling civil cases, with a Median Time from Filing to Trial in civil cases of 27.4 months, compared to New Jersey's 36.2 months.[1]

<div style="text-align:center">(a) <b>Chief Judge Wilken is Particularly Well Suited to Preside Over This Case</b></div>

Chief Judge Wilken is particularly well-suited to handle these related cases for several reasons.  First and foremost, Chief Judge Wilken has been handling two related NCAA antitrust and right of publicity cases since their inception in 2009, including *O'Bannon v. National Collegiate Athletic Ass'n* , Nos. C 09–3329 CW, C 09–4882 CW and *Keller v. Electronic Arts., Inc.*  No. C 09–1967 CW (N.D. Cal.) (Wilken, J.).  After Plaintiff Alston filed his complaint, Chief Judge Wilken related the *Alston* case to her other NCAA antitrust cases.  *See* Related Case Order, *Alston v. NCAA*, No. 4:14-cv-01011-CW (March 17, 2014, Dkt. No. 20).  Pursuant to the Local Rules of the Northern District of California, that means that Chief Judge Wilken has already determined that the actions concern substantially the same parties, property, transaction or event, and it appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different judges.  (N.D. Cal Local Rule 3-12 (a)).

The Panel favors transfer of cases to districts with similar cases.  *See In Re Cook Medical, Inc., Pelvic Repair System Products Liability Litigation*, 2013 WL 2536351 (J.P.M.L. June 10, 2013) (centralizing multiple pelvic repair MDLs to the same district, but keeping the MDL actions separate because the Panel found "the unique facts presented by individual plaintiffs to be less significant than the fact that these actions share core issues of fact" and that "[c]entralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties,

---

[1]   *See* Federal Court Management Statistics September 2013, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2013.aspx

their counsel, and the judiciary."). Here, Chief Judge Wilken is already handling related cases, and will benefit from a wealth of case law and experience dealing with substantially the same defenses that the NCAA is likely to raise in this case.

Second, Chief Judge Wilken has no currently pending MDL cases before her and is well equipped to add an MDL case to her docket. *See, supra,* MDL Statistics Report – Distribution of Pending MDL Dockets. The Panel has often recognized the desirability of transferring MDL cases to a judge who "is not currently assigned to another such docket," and thus will be well-equipped to manage the litigation. *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009); *see also In re Lithium Ion Batteries Antitrust Litigation*, 2013 WL 500765 (J.P.M.L. Feb. 6, 2013) ("centralization in this district provides us the opportunity to assign the litigation to a judge who is not presently presiding over other multidistrict litigation"). By contrast, Judge Wolfson, to whom the *Jenkins v. National Collegiate Athletic Association* action has been assigned, already has one pending MDL, *In re: Plavix Marketing, Sales Practices and Products Liability Litigation* (No. II) (MDL No. 2418). *See, supra,* MDL Statistics Report – Distribution of Pending MDL Dockets.

Third, Chief Judge Wilken is currently the Chief Judge of the Northern District, meaning she will be able to keep this case before her without question. *See* 28 U.S.C. § 137 (the Chief Judge has the power to assign cases). Chief Judge Wilken also recently elected to take senior status at the end of 2014, meaning she will have a reduced caseload thereafter, and more time to devote to this important case. *See Chief Judge Wilken to Take Senior Status In December 2014,* http://www.cand.uscourts.gov/news/145. She related this case to herself knowing that her status would change at the end of the year, indicating her willingness to preside over the case.

## IV.   **CONCLUSION**

For the aforementioned reasons, Plaintiff respectfully requests that the Panel order the consolidation of these related class actions in the Northern District of California under 28 U.S.C. § 1407, "for the convenience of parties and witnesses and to promote the just and efficient conduct of such actions."


DATED:  March 19, 2014                    By:  _____/s/ Bruce L. Simon_____

<div style="margin-left:40%">

Bruce L. Simon
Thomas K. Boardman
PEARSON, SIMON &WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:   (415) 433-9000
Facsimile:    (415) 433-9008

Jon T. King (Cal. Bar No. 205073)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: jonk@hbsslaw.com

Steve W. Berman (*Pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

*Attorneys for Plaintiff Shawne Alston*

</div>