BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE NATIONAL COLLEGIATE ATHLETIC ) 
ASSOCIATION ATHLETIC GRANT-IN-AID ) MDL-2541
ANTITRUST LITIGATION )
)
_____)

**BRIEF OF THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION
IN OPPOSITION TO MOTION TO TRANSFER ACTIONS TO THE
NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407
FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

*Preliminary Statement*

The National Collegiate Athletic Association ("NCAA"), a defendant in both *Alston v. NCAA, et al.*, No. 4:14-cv-01011-CW (N.D. Cal.), and *Jenkins v. NCAA, et al.*, No. 3:14-cv-01678-FLW-LHG (D.N.J.), respectfully submits this brief in opposition to the motion by Shawne Alston ("Alston"), the plaintiff in the Northern District of California action, to transfer the *Jenkins* case to the Northern District of California for pretrial coordination or consolidation with the *Alston* action. As set forth below, transfer of *Jenkins* to the Northern District of California is wholly unwarranted because (i) there are only two pending actions (one in Trenton, New Jersey and the other in Oakland, California), (ii) the two actions differ significantly with respect to the scope of the claims, the membership of the alleged classes and the nature of the relief sought, and (iii) all parties to the actions other than the moving plaintiff in *Alston* oppose transfer of *Jenkins*. Under these circumstances, transfer of *Jenkins* to the Northern District of California for coordination or consolidation with *Alston* would neither serve the convenience of the parties and witnesses nor promote the just and efficient conduct of these actions.

Because the facts strongly support the conclusion that these two cases should remain separate litigations and that *Jenkins* should not be transferred to the Northern District of California for coordinated or consolidated pretrial proceedings with *Alston*, the pending motion should be denied. Nevertheless, as further shown below, if this Panel were persuaded that consolidation were desirable, the convenience of the parties and witnesses, the location of evidence, the nexus to the principal issues, and the experience and capacity of the candidate courts and districts all favor the Southern District of Indiana, and not the Northern District of California, as the most appropriate forum in which to locate these cases as a multidistrict proceeding.

### *Argument*

#### *I.  The* Jenkins *Action Should Not Be Transferred to California for Consolidation with the* Alston *Action.*

Inter-district transfer of civil actions "involving one or more common questions of fact" is inappropriate where the common questions are not "sufficiently complex, unresolved and/or numerous to justify the Section 1407 transfer," *In re Advantage Investors Mortg. Corp. Mortg. Funds Litig.*, 268 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003), and where such a transfer would neither further "the convenience of parties and witnesses" nor "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Moreover, where, as here, "only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization." *In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). Examination of the complaints in *Alston* and *Jenkins*, the only actions involved in this proceeding, demonstrates that transfer of *Jenkins* to the Northern District of California for consolidation with *Alston* would be inappropriate for several reasons.

A.  Only the Movant Favors Transfer.

The motion fails first and foremost because the only party arguing in favor of transfer is Alston, the plaintiff in the action currently pending in the Northern District of California. None of the defendants in either action, nor the plaintiffs in *Jenkins*, believe that transfer is warranted, and all have opposed Alston's motion. As the Panel has routinely recognized in similar circumstances, transfer is unwarranted where the motion lacks support from the responding parties. *See, e.g., In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1354 (J.P.M.L. 2012) (emphasizing that "[a] clear majority of plaintiffs oppose centralization, as well as all responding defendants"); *In re Boehringer Ingelheim Pharm., Inc., Fair Labor Standards Act (FLSA) Litig.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (noting that centralization is "less compelling" when "defendants and/or some of the plaintiffs oppose centralization"); *In re CVS Caremark Corp. Wage & Hour Empl. Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (denying motion for centralization because, *inter alia*, "[a] clear majority of plaintiffs, as well as all defendants, oppose centralization"); *In re Trilegiant Membership Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) (denying motion for centralization where "all defendants opposed centralization in their responses"); *In re Royal Regency*, No. 770, 1988 U. S. Dist. LEXIS 17035, at *2 (J.P.M.L. Aug. 15, 1988) (finding that transfer was not warranted where "the great majority of parties responding to the Section 1407 motion opposes transfer"). Here, only a single party to the actions at issue supports centralization. For this reason alone, the motion should be denied.

B.  The Motion Seeks Transfer of Only One Case.

Second, the motion should be denied because it seeks transfer of a ***single*** class action. As the Panel has explained, "where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization." *In*

3

*re Transocean*, 753 F. Supp. 2d at 1374; *see also In re Chemed Corp. S'holder Derivative Litig. No. II*, MDL No. 2520, 2014 WL 1338427, at *1 (J.P.M.L. Apr. 1, 2014) ("the proponent of centralization faces a heavy burden to demonstrate that centralization of these two actions is appropriate").

Consistent with this principle, the Panel has routinely found that centralization is not appropriate in proceedings where there is a limited number of related class actions. *See, e.g., In re Fresh Dairy Prods. Antitrust Litig.*, 856 F. Supp. 2d 1344, 1344-45 (J.P.M.L. 2012) (denying motion for centralization given the "limited number" of class actions pending); *In re Transocean*, 753 F. Supp. 2d at 1374 (centralization not ordered where the motion involved just two class actions). With so few class actions at issue, the Panel has held, any efficiencies that might be achieved through transfer and consolidation can similarly, and more properly, be achieved through informal cooperation of counsel. *See, e.g., In re Adderall XR (Amphetamine/ Dextroamphetamine) Mktg., Sales Practices & Antitrust Litig.*, MDL No. 2453, 2013 WL 4015749, at *1 (J.P.M.L. Aug. 6, 2013) (denying transfer for three antitrust class actions (with two potential tag-alongs) despite "common factual core"; where there is a small number of cases, "informal cooperation among the involved attorneys and coordination between the involved courts seems preferable to formal centralization"); *In re Trilegiant*, 828 F. Supp. 2d at 1363 (the presence of so few counsel "should facilitate informal coordination and cooperation across the [class] actions"); *In re Facebook Use of Name & Likeness Litig.*, 816 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (declining to centralize three class actions); *In re Raymond Lee Org. Sec. Litig.*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978) (refusing to centralize two class actions; "cooperation between the California and New York courts, if deemed appropriate by those courts, along with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings"). Here, too, where

there is only a single class action pending in each of two districts, the efficiencies sought to be gained under Section 1407 can be achieved informally, and the *Alston* plaintiff's motion for transfer and consolidation of the *Jenkins* action should therefore be denied.

        C.        <u>The *Alston* and *Jenkins* Complaints Involve Different Allegations.</u>

Third, transfer and consolidation are inappropriate where, as here, the two actions present different allegations and "individualized issues." *In re Chilean Nitrate Prods. Liability Litig.*, 787 F. Supp. 2d 1347, 1347 (J.P.M.L. 2011). The *Alston* action, for example, challenges only the NCAA bylaw limiting athletic scholarships to grant-in-aid. It involves a much more narrowly tailored challenge to NCAA rules than the *Jenkins* action, which presents a sweeping attack on the continued importance and vitality of the principle of amateurism in college athletics. The significantly more expansive scope of the *Jenkins* action counsels against transfer and consolidation. *See, e.g., In re UBS AG Offshore Account Litig.*, 883 F. Supp. 2d 1346, 1347 (J.P.M.L. 2012) (denying motion to consolidate two actions where one of the cases involved "claims encompass[ing] extensive conspiracy allegations and violations of federal and state securities laws" and was therefore "significantly more expansive" than the other); *accord In re Syntex Corp. Dioxin Disposal in Mo. Litig.*, MDL No. 659, 1985 U.S. Dist. LEXIS 13379, at *1-2 (J.P.M.L. Nov. 27, 1985) ("we are not persuaded that Section 1407 transfer is warranted" because, *inter alia*, "the actions differ significantly in terms of the . . . scope and focus of the allegations contained in the complaints").

The two cases at issue here are too dissimilar to warrant transfer and consolidation for the additional reason that the plaintiffs in the two putative class actions seek to represent different classes. The *Alston* plaintiff seeks to represent a putative damages class, pursuant to Fed. R. Civ. P. 23(b)(3), limited to college football players who received athletic grants-in-aid within the last four years from a member college of the five defendant college football confer-

5

ences. By contrast, the *Jenkins* plaintiffs seek to represent a significantly broader injunctive relief class, pursuant to Fed. R. Civ. P. 23(b)(2), of *all* Division I Football Bowl Subdivision football players, *as well as* a class of Division I men's basketball players. As the Panel has explained, "[t]he 'common questions of fact' required for centralization simply are not present in . . . litigation" involving significant variations among the classes. *In re Mortg. Indus. Foreclosure Litig.*, MDL No. 2500, 2014 WL 585934, at *1 (J.P.M.L. Feb. 12, 2014) (denying motion for centralization involving "different putative classes in the three putative class actions"); *In re Facebook*, 816 F. Supp. 2d at 1381 ("centralization does not appear necessary, given the limited overlap among the three putative classes"). These differences in class definition, and the different legal standards for certifying putative class actions under Fed. R. Civ. P. 23(b)(2) and 23(b)(3), further support denial of the motion.

Finally, transfer and consolidation are unwarranted where, as here, the complaints seek different relief. *In re Light Cigarettes Mktg. & Sales Practices Litig.*, 652 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009) (declining to coordinate an action involving a "unique putative . . . class seeking only equitable relief"); *In re Harmony Loan Co. Sec. Litig.*, 372 F. Supp. 1406, 1406-07 (J.P.M.L. 1974) (denying transfer when plaintiffs requested different relief). The *Alston* plaintiff seeks injunctive relief and class-wide damages for the difference between the grants-in-aid and the actual cost of attendance. Although the *Jenkins* plaintiffs seek injunctive relief for the class they seek to represent, they claim damages only for the four named plaintiffs, and do not limit such damages to the difference between grants-in-aid and the cost of attendance.

For all of these reasons, transfer and consolidation will neither further the convenience of the parties and witnesses nor promote the just and efficient conduct of the actions. Accordingly, the pending motion should be denied.

## II. Any Centralization Should Occur in the Southern District of Indiana.

Even if this Panel were persuaded that centralization of the *Alston* and *Jenkins* actions would promote the just and efficient conduct of these cases, the Northern District of California is manifestly *not* the most convenient or appropriate forum in which to conduct the pretrial proceedings of these cases. Rather, analysis of the factors on which transfer decisions are typically based establishes that the United States District Court for the Southern District of Indiana, where the NCAA's headquarters are located, is a far more convenient and appropriate forum for conducting the pretrial proceedings of these cases.

This Panel may locate a multidistrict litigation in any district, including a district in which no related action is pending. 28 U.S.C. § 1407(a) ("civil actions . . . may be transferred to *any* district for coordinated or consolidated pretrial proceedings." (emphasis added)); *see also In re Nutramax Cosamin Mktg. & Sales Practices Litig.*, MDL No. 2498, 2013 WL 6825613, at *1, *2 n.2 (J.P.M.L. Dec. 17, 2013) (concluding there was no "impediment" to transfer Florida, Illinois and California actions to Maryland, where no related action was pending but where the defendant was located and "relevant documents and potential witnesses are likely to be found"). In deciding where to locate a multidistrict litigation, the Panel generally considers, among other things, the convenience of the parties and witnesses, the location of evidence, the nexus to the principal issues, and the experience and capacity of the candidate courts and districts. *See In re Bank of Am. Wage & Hour Emp't Practices Litig.*, 706 F. Supp. 2d 1369, 1371-72 (J.P.M.L. 2010). These factors all favor the Southern District of Indiana as the most appropriate forum in which to locate these cases as a multidistrict litigation in the event this Panel were ultimately to decide to centralize these cases at all.

A.  The Southern District of Indiana Is More Convenient for the Parties.

First, and most importantly, the convenience of the parties and the witnesses, as well as the location of evidence, favors the Southern District of Indiana. Defendant NCAA is headquartered in Indianapolis, and its employees and association records are primarily located in Indiana, making the Southern District of Indiana a far more convenient forum than the Northern District of California. *See, e.g.*, Order Granting Def.'s Mot. to Transfer Venue, at 4-5, *Agnew v. NCAA*, No. 10-cv-04804 (N.D. Cal. Feb. 22, 2011) (transferring action challenging NCAA regulations capping scholarships from the Northern District of California to the Southern District of Indiana because the latter forum was "more convenient for defense witnesses employed by NCAA" and would minimize litigation expenses "by adjudicating the action in the district where most of the documentary evidence is located"); *see also In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374, 1377 (J.P.M.L. 2011) (transferring actions to the Northern District of Illinois because "the district is relatively close to [the defendant's] Indiana headquarters"); *In re Discover Card Payment Prot. Plan Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1341, 1343 (J.P.M.L. 2011) (designating Northern District of Illinois as the transferee forum in part because two of the three defendants' corporate headquarters were located there, and likely witnesses, documents, and other information sought in discovery would likely be found there); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 733 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) ("We are persuaded that the Northern District of California is an appropriate transferee forum for this litigation. The sole defendant, Google, is headquartered there, and most relevant documents and witnesses are likely located there."); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 657 F. Supp. 2d 1371, 1372 (J.P.M.L. 2009) (transferring antitrust actions to Illinois because the "[defendant] is headquartered in Deerfield, Illinois [and r]elevant documents and witnesses are thus likely located in or near the Northern District of Illinois"); *In*

8

*re DirecTV, Inc., Early Cancellation Fee Mktg. & Sales Practices Litig.*, 655 F. Supp. 2d 1369, 1370-71 (J.P.M.L. 2009) (choosing the Central District of California as the transferee forum because "DirecTV, Inc., [was] headquartered in that district and, therefore, relevant documents and witnesses [were] likely located there").

As Judge White wrote in his decision transferring the *Agnew* case from the Northern District of California to the Southern District of Indiana:

> NCAA is headquartered in Indianapolis and most of its employees live and work there. Thus Indiana has a strong interest in this litigation. Agnew does not reside in California but suggests that California has an interest in this litigation because many of the NCAA member schools are located in California and the NCAA policy decisions at issue in this case are the result of agreements among the NCAA's member schools. As Agnew acknowledges, however, the member schools 'are dispersed throughout the United States,' giving California no greater interest in this litigation than other states. (Pl's Opp. to Def's Mot. to Transfer Venue at 7.) NCAA has demonstrated that Indiana has the stronger interest in litigating this action.

Order Granting Def.'s Mot. to Transfer Venue, at 6. For precisely the same reasons, the Southern District of Indiana would be the more convenient and appropriate forum in the event the Panel were convinced to centralize *Jenkins* and *Alston*.

The Southern District of Indiana also represents a more central, and thus convenient, forum than the Northern District of California for the other parties in the two cases. Only two parties – defendant the Pacific-12 Conference, which is headquartered in Walnut Creek, California, and *Jenkins* plaintiff William Tyndall, who attends the University of California, Berkeley – are located in the Northern District of California, and both of these parties oppose this motion to transfer. None of the other parties – *including the plaintiff in Alston* who brought this motion to transfer – is located in California. The remaining four defendant conferences are headquartered in Rosemont, Illinois (the Big Ten Conference); Irving, Texas (the Big Twelve Conference), Birmingham, Alabama (the Southeastern Conference); and Greensboro, North Carolina

9

(the Atlantic Coast Conference). The three other plaintiffs in *Jenkins* live in New Brunswick, New Jersey; El Paso, Texas; and Clemson, South Carolina, while Shawne Alston, the party bringing this motion to transfer, lives in Newport News, Virginia.[1]

Indianapolis is also a more geographically centralized location than Oakland, California, for all of these parties. Such a geographically centralized forum is preferable when the parties are dispersed nationwide. *See, e.g., In re H&R Block IRS Form 8863 Litig.*, MDL No. 2474, 2013 WL 5596032, at *1 (J.P.M.L. Oct. 10, 2013) ("We have selected the Western District of Missouri as the transferee district for this litigation. The district is a geographically central forum for this nationwide litigation . . . . [The defendant's] corporate headquarters are located in the Western District of Missouri, as will be many documents and witnesses that will be subject to discovery."); *In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006) ("The Northern District of Illinois is a likely source of relevant documents and witnesses, inasmuch as McDonald's headquarters is located there. Moreover, given the geographic dispersal of the constituent actions, the Northern District of Illinois offers a relatively geographically central and accessible forum for this litigation.").[2]

---

[1] The fact that, within the past year, Shawne Alston has also filed a student-athlete likeness and image licensing action in the District of New Jersey, *Alston v. Electronic Arts Inc.*, No. 3:13-cv-05157-FLW-LHG (D.N.J.), further demonstrates that he has no special relationship to the Northern District of California.

[2] To the extent that the *Alston* plaintiff extols the accessibility of Oakland through three major airports, we note that Indianapolis is at least as accessible and convenient as Oakland to the parties to these actions, and indeed is more accessible and convenient. Unlike Oakland, Indianapolis is centrally located within the United States, and the modern Indianapolis International Airport, which is only fifteen minutes from downtown Indianapolis, is served by all major airlines and is close to the courthouses in the Southern District of Indiana. In 2013, for the second consecutive year and third time overall, the Indianapolis International Airport has been recognized as the best airport in North America by Airports Council International as part of the prestigious annual Airport Service Quality (ASQ) awards for performance excel-
*(cont'd)*

B.  The Southern District of Indiana Has the Closest Nexus to the Issues.

Second, because these cases challenge NCAA eligibility rules, the Southern District of Indiana has the closest nexus to the principal issues presented in the litigations. *See, e.g., In re Publ'n Paper Antitrust Litig.*, 346 F. Supp. 2d 1370, 1372 (J.P.M.L. 2004) (transferring actions to the district that had a "strong nexus to the litigation" and the presence of many defendants); *see also In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, MDL No. 2508, 2014 WL 709763, at *1 (J.P.M.L. Feb. 18, 2014) ("The record indicates that the center of gravity of this litigation is in the Southeast, which is where defendants . . . have their principal places of businesses."); *In re Swine Flu Immunization Prods. Liab. Litig.*, 446 F. Supp. 244, 247 (J.P.M.L. 1978) ("Administrative control over the swine flu program was exercised by officials of the Department of Health, Education and Welfare, which is headquartered in the District of Columbia. The District of the District of Columbia therefore has a greater nexus to the principal issues involved in this litigation than any other federal district."); *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F. Supp. 1019, 1021 (J.P.M.L. 1978) (transferring actions to "[t]he Western District of Washington, [which] has a substantial connection to the common factual questions raised in the litigation"). By contrast, the Northern District of California has no real nexus to the principal issues in these cases.

C.  The Southern District of Indiana Has Experience in Similar NCAA Litigation.

Third, the Southern District of Indiana's experience in adjudicating similar NCAA litigation also weighs in favor of selecting that jurisdiction over the Northern District of California. In determining the appropriate forum for multidistrict litigation, the Panel has previ-

---

*(cont'd from previous page)*
lence. *IND named North America's best airport for 2013*, available at
http://www.indianapolisairport.com/admin/uploads/942/2.19.14%20ASQ.pdf.

ously highlighted the benefit of centralizing actions before a judge with experience overseeing similar litigation. *See In re Serv. Corp. Int'l Sec. Litig.*, 323 F. Supp. 2d 1377, 1378 (J.P.M.L. 2004) (transferring actions to the Southern District of Texas in part because "Judge Lynn N. Hughes of that district has gained helpful experience presiding over similar litigation against SCI"). Here, the Southern District of Indiana has extensive experience in similar matters concerning NCAA athletic scholarship rules. *See, e.g., Agnew v. NCAA*, No. 1:11-CV-0293-JMS-MJD, 2011 WL 3878200 (S.D. Ind. Sept. 1, 2011) (dismissing plaintiff's complaint against the NCAA alleging regulations capping the number of scholarships given per team violated the Sherman Act), *aff'd*, 683 F.3d 328 (7th Cir. 2012); *Rock v. NCAA*, No. 1:12-cv-1019-JMS-DKL, 2013 WL 4479815 (S.D. Ind. Aug. 16, 2013) (denying defendant's motion to dismiss antitrust challenge to NCAA's regulations for quantity and duration of athletics scholarships). The Southern District of Indiana also has considerable experience with other aspects of the NCAA's rules and operations. *See, e.g., George v. NCAA*, No. 1:08-cv-1684-WTL-JMS, 2009 WL 6965794 (S.D. Ind. Sept. 25, 2009) (granting the NCAA's motion to dismiss allegations of an illegal gambling operation), *reh'g granted and opinion vacated*, 623 F.3d 1135 (7th Cir. 2010); *U.S. Dep't of Educ. v. NCAA*, No. 1:06-cv-01333-JDT-TAB, 2006 WL 3198822 (S.D. Ind. Sept. 8, 2006) (ruling on a document production dispute between the NCAA and the United States Department of Education Office), *aff'd*, 481 F.3d 936 (7th Cir. 2007); *NCAA v. Coors Brewing Co.*, No. IP 02-1325-B/S, 2002 WL 31431479 (S.D. Ind. Oct. 25, 2002) (remanding a dispute involving Coors' improper use of NCAA tournament tickets as a prize in commercial promotions).

Alston claims that Judge Wilken's handling of the *NCAA Student-Athlete Name & Likeness Licensing Litigation* "give[s] her a wealth of preexisting knowledge and experience in

dealing with the issues presented" in *Alston* and *Jenkins*.[3] But unlike *Alston* and *Jenkins*, the name and likeness licensing cases predominantly involve the use of player names and likenesses for commercial licensing purposes. By contrast, *Alston* and *Jenkins* involve the antitrust implications of the NCAA grant-in-aid regulations. The Southern District of Indiana's extensive experience with NCAA rules, including rules regarding scholarships, makes it a far more appropriate forum for consolidation of these cases, were consolidation deemed appropriate at all.

D. The Southern District of Indiana Has Greater Capacity to Handle a Multidistrict Litigation Proceeding at This Time.

Finally, the Southern District of Indiana has more capacity than the Northern District of California to handle an additional multidistrict litigation, and this factor, too, weighs in favor of Indianapolis over Oakland. The Panel seeks to establish multidistrict litigation proceedings in districts that have the time and resources to handle such potentially time-consuming proceedings. *See, e.g., In re Boscov's Dep't Store, LLC, Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 528 F. Supp. 2d 1341, 1342 (J.P.M.L. 2007) (transferring to a district "with the capacity to handle this litigation and a transferee judge with the time . . . to steer this litigation on a prudent course"). The Southern District of Indiana currently has only one pending multidistrict litigation, while the Northern District of California has sixteen pending multidistrict cases,[4] mak-

---

[3] Plaintiffs also make much of the fact that Judge Wilken took *Alston* as a related case to the *NCAA Student-Athlete Name & Likeness Licensing Litigation*. But the mere fact that the cases have been deemed related does not compel the conclusion that the Northern District of California is the appropriate forum for these cases. *See, e.g., In re Fresh Dairy Prods. Antitrust Litig.*, 856 F. Supp. 2d at 1345 (denying Section 1407 transfer to the Northern District of California where three actions had been marked related).

[4] *See* MDL Statistics Report – Distribution of Pending MDL Dockets (Report Date: 3/13/2014), *available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-13-2014.pdf; *In re Lidoderm Antitrust Litig.*, MDL No. 2521, Transfer Order, at 2 (J.P.M.L. Apr. 3, 2014), *available at* http://www.jpml.uscourts.gov/sites/jpml/files/MDL_2521_Initial_Transfer-03-14.pdf.

13

ing the Southern District of Indiana the more appropriate forum in which to establish another such proceeding. *In re Loestrin 24 Fe Antitrust Litig.*, MDL No. 2472, 2013 WL 5505369, at *1 (J.P.M.L. Oct. 2, 2013) ("Centralization in this district also permits the Panel to assign the litigation to a district with only one other multidistrict litigation pending and ample resources to efficiently manage this litigation."). Moreover, although Judge Wilken does not currently preside over a multidistrict litigation, she is presiding over a significant consolidated proceeding, *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, No. 4:09-cv-01967 (N.D. Cal.), which is scheduled to begin trial on June 9, 2014. For these reasons, too, the Southern District of Indiana would be the better choice if the Panel were to conclude that a multidistrict litigation were proper under these circumstances.

\* \* \*

In sum, the facts strongly support the conclusion that these two cases should remain separate litigations and that *Jenkins* should not be transferred to the Northern District of California for coordinated or consolidated pretrial proceedings with *Alston*. Moreover, even if this Panel were persuaded that consolidation were desirable, the convenience of the parties and witnesses, the location of evidence, the nexus to the principal issues, and the experience and capacity of the candidate courts and districts all favor the Southern District of Indiana, and not the Northern District of California, as the most appropriate forum in which to locate these cases as a multidistrict litigation.

### *Conclusion*

For the foregoing reasons, the motion to transfer the *Jenkins* action to the Northern District of California for coordinated or consolidated pretrial proceedings with the *Alston* action should be denied.

14

Respectfully submitted,

/s/ Jeffrey A. Mishkin

Jeffrey A. Mishkin
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Four Times Square
New York, N.Y. 10036
Telephone: (212) 735-3230
Facsimile: (917) 777-3230
jeffrey.mishkin@skadden.com

Counsel for Defendant National Collegiate Athletic Association

Dated: April 10, 2014