**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: NATIONAL COLLEGIATE | ) | MDL No. 2541 |
| ATHLETIC ASSOCIATION ATHLETIC | ) | |
| GRANT-IN-AID ANTITRUST LITIGATION | ) | |
| | ) | |
| _____ | ) | |

***JENKINS* PLAINTIFFS' OPPOSITION TO ALSTON'S MOTION FOR TRANSFER OF
ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO
28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED
PRETRIAL PROCEEDINGS**

Alston's motion to transfer and consolidate should be denied because he cannot meet his burden of demonstrating that transferring the two pending matters will convenience the parties or witnesses or promote the just and efficient conduct of these two very different litigations. The pending actions are simply not sufficiently common to warrant transfer for coordination or consolidation. Quite the opposite, it would be contrary to sound judicial administration to transfer the *Jenkins* matter.

*Jenkins* has been brought by *current* college *basketball and* football players seeking certification *only* of an injunctive relief class. It will not include any damages claims for former players. *Jenkins* is the only action involving college basketball players, and is the only action involving current players. *Alston*, by contrast, has been brought by a single, *former* college *football* player primarily seeking to certify a *damages* class whose damages claims and theories are fundamentally inconsistent with the injunctive relief sought by the *Jenkins* class. To the extent *Alston* seeks injunctive relief, it does so with a plaintiff who is a *former* player who left college long before the case was filed. These are, thus, two substantially different litigations with different proposed classes, different (and possibly conflicting) interests, different subjects,

and different objectives.

Moreover, any transfer of the *Jenkins* action for coordination or consolidation would be inefficient and unfair.  For example, a ruling to transfer *Jenkins* for coordination or consolidation would create the risk of unreasonably delaying relief to the *Jenkins* Plaintiffs, who will seek swift certification of their injunction class only, with the objective of obtaining a timely injunctive remedy, in a bench trial, to provide relief for the ongoing irreparable injuries suffered by the top tier of current and incoming college basketball and football players due to Defendants' illegal restraints.  *Jenkins* should not be bottle-necked and side tracked by *Alston*'s pursuit of class-wide damages for former collegiate athletes under a damages theory that is at odds with the current- and future-player injunctive relief claims in *Jenkins*.

Alternatively, if this Court nonetheless were to determine that these two actions should be transferred for coordination for pretrial purposes in an MDL (under no circumstances would consolidation be appropriate), the *Alston* action should be transferred to the District of New Jersey and heard by Judge Freda L. Wolfson, who is currently presiding over *Jenkins*.  The District of New Jersey is the most convenient forum for the overwhelming majority of the parties, is the only forum chosen by the basketball plaintiffs, and is the residence of a named *Jenkins* plaintiff.  Judge Wolfson also has the necessary experience and knowledge—including experience in collegiate athlete litigation, just like the California litigation that Alston relies upon—to fairly and effectively adjudicate the actions.  By contrast, these matters are ill-suited for transfer to the Northern District of California, which is not only less convenient for the vast majority of the parties, but also was chosen by Alston without any plaintiff residing in, or having a material connection to, that district.

## OVERVIEW OF THE TWO PENDING MATTERS

**_The Jenkins Action (District of New Jersey)_**

On March 17, 2014, Plaintiffs Martin Jenkins, Johnathan Moore, Kevin Perry, and William Tyndall (the "*Jenkins* Plaintiffs") filed suit in the District of New Jersey against the National Collegiate Athletic Association ("NCAA") and five major college athletic conferences (the "Power Conferences") (collectively, "Defendants"). *See Jenkins v. Nat'l Collegiate Athletic Ass'n*, Case No. 3:14-cv-01678-FLW-LHG (D. N.J.) ("*Jenkins"*). The suit challenges under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, restrictions imposed by Defendants on the amount of economic benefits current and future Division I football and men's basketball athletes can receive for their athletic services. *Jenkins* Compl. at ¶ 7.

In short, the NCAA, the Power Conferences, and their member institutions have agreed upon rules that fix the maximum amount of financial benefits that Division I men's basketball and top-level college football players can receive for their athletic services, despite the billions of dollars in revenues they help generate, as the equivalent of what the NCAA defines as a "full scholarship." These rules are challenged as unlawful price-fixing and group-boycott agreements. *Id.* at ¶¶ 5, 7.

The *Jenkins* Plaintiffs, who are all current top-tier college basketball and football players, seek to represent two classes comprised of top-level college football and men's basketball athletes who currently receive, or in the future will receive, athletic scholarships under NCAA and Power Conference rules. *Id.* at ¶¶ 27-28. The *Jenkins* Plaintiffs seek to permanently enjoin the NCAA and conference price-fixing restraints on financial benefits for such athletes. *Id.* at ¶ 3. They are prepared to proceed with streamlined class discovery, a quick hearing on (injunctive) class certification, and to then pursue an aggressive bench-trial schedule on the

3

merits of their injunctive relief claim, with the four plaintiffs' individual claims for damages bifurcated for consideration after the injunctive relief bench trial. This approach will serve the best interest of class members, who are currently subject to, and will continue to be subject to, the illegal restraints at issue unless judicial relief is granted.

The *Jenkins* Plaintiffs are all currently enrolled at NCAA and conference member institutions and presently subject to the challenged restrictions. *Id*. at ¶ 2. They represent both football *and* basketball players. *Id*. The *Jenkins* Plaintiffs purposely availed themselves of the District of New Jersey as the forum of their choice. Named Plaintiff Johnathan Moore is a current men's basketball athlete at Rutgers University ("Rutgers"), located in New Brunswick, New Jersey. He resides in New Brunswick and attends Rutgers on an athletic scholarship funded in New Jersey. *Id*. at ¶¶ 13, 17. The *Jenkins* Plaintiffs' chosen counsel are primarily located in New York City and Newark, New Jersey.

### *The Alston Action (Northern District of California)*

A separate antitrust suit was filed March 5, 2014, in the Northern District of California by Shawne Alston. *See Alston v. Nat'l Collegiate Athletic Ass'n*, 4:14-cv-01011-CW (N.D. Cal.) ("*Alston*"). Alston is a former college football player at West Virginia University ("West Virginia") who had already left college when his action was filed, and now resides in Virginia. *Alston* Compl. at ¶¶ 18. He seeks past damages for restrictions imposed by the NCAA and the Power Conferences during his football participation in prior seasons. *Id*. at ¶¶ 6. Alston seeks to represent a single class for damages and injunctive relief that includes former college football players who received athletic scholarships from NCAA member institutions in one of the five Power Conferences over the past four years. *Id*. at § VII. He is the only named plaintiff in that matter and has no apparent connection to California.

4

Alston is no longer enrolled at an NCAA member institution or subject to the challenged restraints. *Id*. at ¶ 46. He has not received an athletic scholarship for almost a full year and has exhausted his NCAA eligibility. *Id*. Alston seeks only to represent football players from the five Power Conferences. *Id*. at ¶ 6, § VII. Alston was not a college basketball player and does not seek to represent, and cannot represent, former, current, or future college basketball players.

The predominant relief sought by the *Alston* class is for class-wide damages for former college football players at the schools in the five Power Conferences. *Id*. at ¶¶ 6, 82, 291. Specifically, the *Alston* class seeks class-wide damages, primarily for former football players, equal to the difference between the maximum amount of an athletic scholarship permitted under NCAA and Power Conference restraints and the actual cost of attending college. *Id*. at ¶ 6. The theory underlying the *Alston* class's damages claims—limited to the actual cost of collegiate attendance—is at odds with the injunctive relief sought by the *Jenkins* class, which does not recognize cost of attendance or any other arbitrary cap on player remuneration as a lawful horizontal restraint under the antitrust laws.[1]

*Alston* was filed in the Northern District of California, almost 3,000 miles from Alston's hometown and over 2,600 miles from Alston's college. Alston is originally from Hampton, Virginia, and spent four years in Morgantown, West Virginia. *Id*. at ¶¶ 19, 22-46. During his first three years with the football team, West Virginia participated as a member of the now-defunct Big East Conference, which was headquartered in Providence, Rhode Island. That conference included two universities in New Jersey—Rutgers and Seton Hall University.

---

[1] Alston additionally seeks to enjoin enforcement of the current limits on football scholarships but is himself no longer a collegiate athlete subject to those restraints. *Id*. at ¶¶ 6, 46.

The vast majority of the NCAA institutions that recruited and offered an athletic scholarship to Alston under the challenged restrictions are located in the middle Atlantic states. Alston's team did not participate in an NCAA-sanctioned athletic competition in California during his entire college career, whereas, he did participate in multiple NCAA football games in New Jersey.

*Alston*'s prayer for class-wide damages will necessitate a substantial amount of discovery and expert testimony related to class certification and, if that class is certified, to proving up damages at trial.  None of this discovery or expert testimony regarding class-wide damages will be necessary in *Jenkins*.

## ARGUMENT

### I.    The Motion Should Be Denied Because There Are Only Two Pending Cases Which Do Not Share Common Facts, Do Not Involve Complex Overlapping Factual Questions, And, To The Extent Factual Overlap Exists, Informal Discovery Coordination Is Feasible.

A.    <u>Alston Bears an Especially Heavy Burden Because Only Two Cases Are Pending.</u>

As a threshold matter, where only a minimal number of arguably related actions are pending, the moving party bears an even heavier burden of demonstrating the need for MDL centralization.  *See, e.g.*, *In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373 (J.P.M.L. 2010); *In re Am. Home Realty Network, Inc. Multiple Listing Serv. Copyright Infringement Litig.*, 939 F. Supp. 2d 1372 (J.P.M.L. 2013) (holding that when only a small number of cases are pending in different districts, transfer may be unnecessary and inefficient).  The Panel routinely denies transfer when, as here, only two actions are at issue.  *See, e.g.*, *In re Ins. Indus. Discriminatory Sales Practices Litig.*, 460 F. Supp. 2d 1376 (J.P.M.L. 2006); *In re Personalized Media Commc'ns., LLC, Patent Litig.*, 261 F. Supp. 2d 1380 (J.P.M.L. 2003); *In re*

*AT&T Broadband Telecomm. Servs. Litig.*, 237 F. Supp. 2d 1380 (J.P.M.L. 2002).[2]  As set forth

below, Alston has not and cannot satisfy his heavy burden under these circumstances.

      B.    *Alston* and *Jenkins* Are Fundamentally Different Actions and Transfer and Consolidation Would Be Unfair And Inefficient.

A prerequisite for MDL transfer is the existence of civil actions "involving one or more

common questions of fact."  28 U.S.C. § 1407; *In re Hyundai and KIA Fuel Economy Litig.*, 923

F. Supp. 2d 1364 (J.P.M.L. 2013).  Most importantly, "Cases should not be consolidated if it

would result in delay and other unnecessary burdens on parties, such as having to participate in

discovery irrelevant to their cases."  MANUAL FOR COMPLEX LITIGATION § 20.11 (4th ed. 2013).

Here, the two pending actions are profoundly different—the parties are *different*, the plaintiffs'

statuses and circumstances are *different*, the classes the plaintiffs seek to represent are *different*,

the requested relief is *different* (indeed, it is inconsistent), the composition and interests of the

proposed classes are *different*, and the anticipated schedules in each case are *different*.  While the

matters do involve overlapping Defendants and assert a similar cause of action (a violation of the

Sherman Act), they do not share sufficiently common facts to warrant MDL coordination or

consolidation.

To begin, *Alston* involves different parties and different classes, *i.e.*, *Alston* does not

involve any of the approximately 4,000 current men's basketball players from 350 NCAA

Division I institutions, or any of the numerous non-Power Conference football players, each of

whom will be included in the *Jenkins* classes.  *Alston* also does not include any plaintiffs who are

---

[2] Indeed, the JPML has denied transfer and consolidation where only two cases are pending, even when tagalong suits are expected.  *Am. Home Realty*, 939 F. Supp. 2d at 1373 (holding that despite indications that tagalong suits were imminent, consolidation was unwarranted because "there are only two actions pending in two districts, and the record indicates that efforts to coordinate discovery voluntarily are likely to be successful").  In this case, there are no such indications that tagalong suits are imminent.

7

currently attending college or subject to the challenged restrictions (unlike in *Jenkins*, in which all of the named Plaintiffs are current students subject to the challenged restrictions).  Further, *Alston* predominantly seeks class-wide damages (unlike *Jenkins*, in which the classes seek only injunctive relief).  *Alston* also seeks to certify a class where most of the members, like Alston, will be former college football players (none of whom will be in the *Jenkins* proposed classes of current and future players).  And, *Alston* does not address restrictions on competition for basketball players at all.

Because the *Jenkins* Plaintiffs seek to certify only an injunctive class, they intend to pursue an aggressive pretrial schedule to procure an expedited route to injunctive class certification and relief from the irreparable harm, which their class members are currently incurring.  To do so, the *Jenkins* Plaintiffs are willing to defer trial on their individual damages claims until after an injunctive relief bench trial.  By contrast, *Alston* will require protracted discovery related to its damages class, including expert discovery, that will be irrelevant to the *Jenkins* class claims, and will seek to have its damages class claims determined by a jury, not a bench trial.

Indeed, if the *Jenkins* Plaintiffs are mired in unrelated discovery and damages class-certification issues presented by *Alston*, the timeliness of their requested injunctive relief will be put in severe jeopardy.  That is because a protracted discovery period caused by coordination or consolidation could result in many members of the *Jenkins* classes, including the named plaintiffs, not obtaining an injunctive relief determination during their time at their respective colleges.  Such an inefficient and harmful result would run afoul of the purpose of transfer under this Panel's precedent.  *See, e.g.*, *In re Shipley Co., Inc. Patent Litig.*, 383 F. Supp. 847, 848 (J.P.M.L. 1974).

C.     Transfer Is Unwarranted Because the Overlapping Issues Do Not Involve Complicated Questions of Fact.

Even where actions have some overlapping facts, the movant still bears a heavy burden of proving that such common issues of fact are themselves "sufficiently complex, unresolved, and/or numerous" so as to justify transfer.  *In re Commonwealth Scientific and Indus. Research Org. Patent Litig.*, 395 F. Supp. 2d 1357, 1358 (J.P.M.L. 2005); *see also In re Equinox Fitness Wage and Hour Emp't Practices Litig.*, 764 F. Supp. 2d 1347 (J.P.M.L. 2011) (holding that two actions in two districts with similar factual allegations were insufficiently complex to merit transfer for pretrial coordination or consolidation).

For example, in *Equinox Fitness*, even though the two cases at issue presented related factual questions stemming from California's wage and hour laws, this Panel determined the cases were "not particularly complex."  *Id*. at 1348-1349.  The same logic holds true for many of the overlapping factual aspects of the two cases presented here—such that Alston cannot satisfy his heavy burden.  For instance, both cases challenge restraints imposed by the maximum compensation rules agreed to by common Defendants.  Unlike most Section 1 conspiracy cases, the existence of and content of these horizontal restraints are not in dispute, and are readily available in manuals published online and elsewhere.

On the other hand, the factual aspects of the respective lawsuits that *are* complex do not overlap.  For example, there may be complexities in Alston's pursuit of a damages class for mostly former college football players, including the economic issues of determining class-wide damages based on a cost-of-college-attendance theory, but that issue is wholly irrelevant to *Jenkins*, which does not seek any damages class and will not be formulating any injury claim on the basis of the cost of attendance (which itself can be a complex factual issue).  The result is the absence of any critical mass of complex overlapping factual issues to justify transfer.

9

D.    Transfer Is Unwarranted Because the Parties Can Informally Coordinate Discovery to the Extent Appropriate.

When few cases are pending, "[a]lternatives to transfer exist that can minimize whatever possibilities there might be of duplicative discovery." *In re Best Buy Co., Inc., Restocking Fee Sales Practices Litig.*, 528 F. Supp. 2d 1364 (J.P.M.L. 2007).  For example, where "cooperation among the parties and deference among the courts can easily minimize the possibilities of duplicative discovery," transfer  is unwarranted.  *In re Equinox Fitness*, 764 F. Supp. 2d at 1349.

Here, transfer should be denied for the additional reason that informal coordination of any limited overlapping discovery is feasible and the more equitable and efficient alternative in light of the different interests and compositions of the respective classes.  This is especially true because all parties in these actions are represented by highly experienced counsel, well versed in navigating and coordinating complex litigation among several parties.  Although the *Jenkins* Plaintiffs strongly oppose transfer, they are willing and able, through their counsel, to coordinate with counsel for Alston and counsel for Defendants to achieve discovery efficiencies across the two matters if and when appropriate.

*             *             *

In sum, these two cases bear no resemblance to the types of parallel and copycat antitrust class-action cases that are routinely transferred for MDL coordination or consolidation by the Panel.  These are *not* like the legions of cases in which scores of recycled complaints alleging almost verbatim facts, seeking to certify symmetrical classes, and pursuing identical relief have been filed.  Instead, the Panel has been presented with merely two fundamentally different lawsuits involving different proposed classes, seeking different, and to some degree inconsistent, relief.  Transfer in these circumstances is not appropriate, and Alston's motion should be denied.

10

**II.    Alternatively, If The Panel Were To Determine That MDL Treatment Is Appropriate (It Should Not), The Cases Should Be Transferred To The District Of New Jersey And Heard By Judge Wolfson.**

Should the Panel nonetheless deem MDL designation and transfer to be appropriate, then the actions should be transferred to the District of New Jersey for the convenience of the parties and in the interests of justice.  The District of New Jersey is the closest appropriate forum for the overwhelming majority of the parties, including Alston, as well as five of the six common Defendants and all of the named *Jenkins* Plaintiffs.  Further, Judge Wolfson has substantial experience with cases of this nature, including those related to college sports and the NCAA, as well as prior MDL proceedings.

A.    The District of New Jersey Is the Most Convenient Forum for an Overwhelming Majority of the Parties.

When considering transfer, the Panel evaluates which forum best serves "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407.  In this instance, the District of New Jersey is a more convenient forum for an overwhelming majority of the parties, including the Defendants.  The NCAA—the ringleader of the conspiracy—is headquartered in Indianapolis, Indiana.  Indianapolis is about 650 miles from Trenton, New Jersey, but nearly three times farther than that from Oakland, about 1,940 miles.  Representatives from the NCAA will constitute many of the defense witnesses in these matters.  The District of New Jersey is also markedly closer to the headquarters of four of the five other Defendants, representatives of which will also be primary witnesses in both matters:

- The Atlantic Coast Conference headquarters in Greensboro, North Carolina is 478 miles from Trenton but 2,753 miles from Oakland;

- The Big Ten Conference headquarters in Rosemont, Illinois is 796 miles from Trenton but 2,121 miles from Oakland;

11

- The Big 12 Conference headquarters in Irving, Texas is 1,518 miles from Trenton but 1,708 mile from Oakland;

- The Southeastern Conference headquarters in Birmingham, Alabama is 920 miles from Trenton but 2,314 miles from Oakland.

For only one of the Defendants, the Pac-12 Conference, is the Northern District of California a more convenient forum, and that relative convenience is substantially outweighed by the inconvenience other parties would encounter if forced to litigate there.

**Locations of Defendants**



Furthermore, the District of New Jersey is also the more convenient forum for all named Plaintiffs in both actions, including Alston. As noted earlier, *Jenkins* Plaintiff Johnathan Moore is a current resident of New Jersey and a student at Rutgers, which is less than an hour from the courthouse in Trenton. Plaintiff Martin Jenkins attends Clemson University in Clemson, South Carolina, and is considerably closer to the District of New Jersey than to the Northern District of

12

California.  Additionally, while William Tyndall attends the University of California, Berkley and Kevin Perry attends the University of Texas, El-Paso, these *Jenkins* Plaintiffs both *chose* to file in the District of New Jersey and should be given deference on this choice as the masters of their complaint.

Although Alston's choice of the Northern District of California warrants consideration, he has no apparent connection to that District.  Alston is from Hampton, Virginia, which is almost 3,000 miles from Oakland, but only 315 miles from Trenton, New Jersey.  He attended and played football at West Virginia, located in Morgantown, West Virginia, which is approximately 2,640 miles from Oakland, California, but only 329 miles from Trenton.  The vast majority of the NCAA institutions that recruited and offered Alston an athletic scholarship under the challenged restrictions are located in the middle Atlantic states and Alston did not participate in an NCAA-sanctioned athletic competition in California but did play in multiple NCAA football games in New Jersey.

Beside geographic proximity, ease of travel also weighs in favor of the District of New Jersey, as it can accommodate any travel required of the parties and witnesses better than the Northern District of California.  Trenton is served by multiple major airports (*e.g.*, Philadelphia International Airport and Newark International Airport), a major Amtrak rail hub, is easily accessible by car from New York and Philadelphia, and has an airport to which there are regular direct flights from Indianapolis.

    B.    <u>The District of New Jersey Possesses the Judicial Resources Required for the Just and Efficient Adjudication of These Matters.</u>

Beyond being the most convenient forum for these actions, the District of New Jersey also has the requisite resources and experience to handle an MDL proceeding such as that proposed here.  When determining the appropriate forum for transfer, Panel precedent provides

for consideration of additional factors, including whether the judge considered in the district has experience with the specific matter; where the most advanced, or first-filed action is pending; the number of actions pending in a proposed district; and whether the judge has MDL experience. *See generally In re Plavix Marketing, Sales Practices and Prods. Liab. Litig. (No. II)*, 923 F. Supp. 2d 1376 (J.P.M.L. 2013); *In re L'Oreal Wrinkle Cream Marketing and Sales Practices Litig.,* 908 F. Supp. 2d. 1381 (J.P.M.L. 2012); *In re Emerson Electric Co. Wet/Dry Vac Marketing and Sale Practice Litig.*, 885 F. Supp. 2d. 1383 (J.P.M.L. 2012); *In re Park West Galleries, Inc., Litig.*, 887 F. Supp. 2d 1385 (J.P.M.L. 2012)

In this instance, there are only two actions, neither of which is more procedurally advanced than the other, and both of which were filed within days of the other. Both prospective judges are highly experienced jurists who have presided over MDL proceedings. For her part, Judge Wolfson is well versed in antitrust issues and has presided over MDL matters before. *See, e.g.*, *In re Plavix Marketing Sales Practices and Prods. Liab. Litig.*, MDL No. 2418, Case No. 13-cv-05910-FLW-TJB (D.N.J. 2013); *see also Jersey Asparagus Farms Inc. v. Rutgers University*, 803 F. Supp. 2d 295 (2011); *Heartland Payment Sys., Inc. v. MICROS Sys., Inc.*, 2008 WL 4510260 (D.N.J. Sept. 29, 2008).[3] She also has significant experience presiding over class actions. *See, e.g.*, *In re Johnson & Johnson Shareholder Derivative Litig.*, 865 F. Supp. 2d 545 (D.N.J. 2011); *In re Vonage Initial Public Offering Sec. Litig.*, 2009 WL 936872 (D.N.J. Apr. 6, 2009).

Although Chief Judge Claudia Wilken of the Northern District of California currently

---

[3] Judge Wolfson, like most other federal judges, is capable of handling multiple MDL matters. Currently, Judges in both the Northern District of California and the District of New Jersey are presiding over multiple MDL proceedings.

presides over two cases against the NCAA—*O'Bannon v. Nat'l Collegiate Athletic Ass'n*, Nos. C 09–3329 CW, C 09–4882 CW and *Keller v. Electronic Arts., Inc.* No. C 09–1967 CW (N.D. Cal.)—those cases are very different from both *Jenkins* and *Alston*, in that they relate primarily to player publicity rights and the use of the athletes' names, images, and likenesses in video games and television broadcasts.  If, however, the Panel considers that experience to be relevant, Judge Wolfson has presided over similar litigation brought by NCAA athletes involving publicity rights.  *See Hart v. Elec. Arts, Inc.*, 808 F. Supp. 2d 757 (D.N.J. 2011).

A remaining factor, docket congestion, does not tip in either direction.[4]  Alston argues that the Northern District of California may render a decision most swiftly, but the complicated matters already pending say otherwise.  For example, *O'Bannon* was filed in 2009, and the trial is commencing this June, roughly five years later.  That case was substantially delayed by its consideration of a damages class, the certification of which the Court ultimately rejected.

In sum, the District of New Jersey is the most appropriate forum for these cases.  Should this Panel decide to grant the motion for MDL transfer, the District of New Jersey is the appropriate transfer venue.

---

[4] As of December 31, 2013, the median time for civil cases from filing to trial in the Northern District of California was 31 months, while in the District of New Jersey, the median time was 37.6 months.  United States District Courts National Judicial Caseload Profile, http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-december-2013.pdf&page=66.  The protracted discovery required by *Alston* will obviate the difference in time to trial between the two proposed forums.  Indeed, the concept of "median" time is not a good measure for assessing this issue, as *Jenkins*, which seeks an injunction-only class, is not likely to be typical of the median case in time to trial, as the factual issues are not complex and the need for timely injunctive relief is substantial.  The *Jenkins* Plaintiffs believe that Judge Wolfson and Magistrate Judge Lois H. Goodman have the capability to accommodate their proposed expedited scheduling needs.

## CONCLUSION

For all the reasons discussed above, the *Jenkins* Plaintiffs respectfully request that the Panel deny Alston's motion for MDL transfer.  However, if a transfer were ordered, the actions should be heard in the District of New Jersey before Judge Wolfson.


Respectfully submitted,

DATED:        April 10, 2014          **WINSTON & STRAWN LLP**

*Counsel for Plaintiffs*
*Martin Jenkins, Johnathan Moore, Kevin*
*Perry, and William Tyndall*

By:  /s/ Jeffrey L. Kessler_____
     Jeffrey L. Kessler
     WINSTON & STRAWN LLP
     200 Park Avenue
     New York, NY 10166
     T: (212) 294-6700
     F: (212) 294-4700
     jkessler@winston.com

**OF COUNSEL**

James S. Richter
Melissa Steedle Bogad
WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, NJ 07102
T: (973) 848-7676
F: (973) 848-7650

David G. Feher
David L. Greenspan
Timothy M. Nevius
Joseph A. Litman
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
T: (212) 294-6700
F: (212) 294-4700

16

Sean G. Wieber
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
T: (312) 558-5600
F: (313) 558-5700

## PROOF OF SERVICE

I, Jeffrey L. Kessler, hereby certify that on April 10, 2014, a copy of the foregoing *JENKINS* PLAINTIFFS' OPPOSITION TO ALSTON'S MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS, and a copy of this Proof of Service, were filed and served via notice of electronic filing and U.S. mail or electronic mail upon the following parties:

| | |
|---|---|
| Jon T. King<br>Hagens Berman Sobol Shapiro LLP<br>715 Hearst Avenue<br>Suite 202<br>Berkeley, CA 94710<br>510-725-3000<br>Email: jonk@hbsslaw.com<br><br>Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Avenue<br>Suite 3300<br>Seattle, WA 98101<br>206-623-7292<br>Email: steve@hbsslaw.com<br><br>*Counsel for Plaintiff Shawne Alston* | Bruce Lee Simon<br>Thomas Kay Boardman<br>Pearson Simon & Warshaw, LLP<br>44 Montgomery Street<br>Suite 2450<br>San Francisco, CA 94104<br>415-433-9000<br>Email: bsimon@pswlaw.com<br>Email: tboardman@pswlaw.com<br><br>*Counsel for Plaintiff Shawne Alston* |
| Robert James Wierenga<br>Gregory L. Curtner<br>Jacob Klein Danziger<br>Kimberly K. Kefalas<br>Schiff Hardin LLP<br>350 South Main Street<br>Suite 210<br>Ann Arbor, MI 48104<br>734-222-1507<br>Email: rwierenga@schiffhardin.com<br>Email: gcurtner@schiffhardin.com<br>Email: jdanziger@schiffhardin.com<br>Email: kkefalas@schiffhardin.com<br><br>Jeffrey A. Mishkin<br>Karen H. Lent<br>Anthony J. Dreyer<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square | Jennifer L. Jones<br>Scott P. Cooper<br>Sarah Kroll-Rosenbaum<br>Shawn Scott Ledingham, Jr.<br>Proskauer Rose LLP<br>2049 Century Park East<br>Suite 3200<br>Los Angeles, CA 90067<br>310-284-4509<br>Email: jljones@proskauer.com<br>Email: scooper@proskauer.com<br>Email: skroll-rosenbaum@proskauer.com<br>Email: sledingham@proskauer.com<br><br>Lawrence R. Sandak<br>Joseph C. O'Keefe<br>Wanda L. Ellert<br>Proskauer Rose LLP<br>One Newark Center |

| | |
|---|---|
| New York, NY 10036<br>212-735-3000<br>Email: jeffrey.mishkin@skadden.com<br>Email: karen.lent@skadden.com<br>Email: anthony.dreyer@skadden.com<br><br>*Counsel for Defendant National Collegiate Athletic Association* | Newark, NJ 07102<br>973-274-3200<br>Email: lsandak@proskauer.com<br>Email: jokeefe@proskauer.com<br>Email: wellert@proskauer.com<br><br>*Counsel for Defendant Pacific 12 Conference* |
| Christopher John Kelly<br>Mayer Brown LLP<br>Two Palo Alto Square<br>3000 El Camino Real, Suite 300<br>Palo Alto, CA 94306<br>650-331-2000<br>Email: cjkelly@mayerbrown.com<br><br>Andrew S. Rosenman<br>Mayer Brown LLP<br>71 South Wacker Dr.<br>Chicago, IL 60606<br>312-782-0600<br>Email: arosenman@mayerbrown.com<br><br>Michael Martinez<br>Mayer Brown LLP<br>1675 Broadway<br>New York, NY 10019<br>212-506-2514<br>Email: michael.martinez@mayerbrown.com<br><br>*Counsel for Defendant Big Ten Conference* | Nathan C. Chase, Jr.<br>Robert W. Fuller III<br>Mark W. Merritt<br>Lawrence C. Moore III<br>Amanda R. Pickens<br>Robinson Bradhsaw & Hinson<br>101 N. Tryon St.<br>Suite 1900<br>Charlotte, NC 28246<br>704-377-8383<br>Email: nchase@rbh.com<br>Email: rfuller@rbh.com<br>Email: mmerrit@rbh.com<br>Email: lmoore@rbh.com<br>Email: apickens@rbh.com<br><br>Mark Jeremy Seifert<br>Robert Rory Moore<br>Allen Matkins Leck Gamble Mallory & Natsis LLP<br>Three Embarcadero Center, 12th Floor<br>San Francisco, CA 94111<br>415-837-1515<br>Email: mseifert@allenmatkins.com<br>Email: rmoore@allenmatkins.com<br><br>Kevin Harry Marino<br>John A. Boyle<br>Marino Tortorella & Boyle PC<br>427 Southern Boulevard<br>Chatham, NJ 07928<br>973-824-9300<br>Email: jboyle@khmarino.com<br>Email: kmarino@khmarino.com<br><br>*Counsel for Defendant Southeastern* |

| | Conference |
|---|---|
| Charles Lagrange Coleman, III<br>Adanna M. Love<br>Holland & Knight LLP<br>50 California Street<br>Suite 2800<br>San Francisco, CA 94111<br>415-743-6900<br>Email: ccoleman@hklaw.com<br>Email: adanna.love@hklaw.com<br><br>Sean C. Sheely<br>Duvol M. Thompson<br>Hollan & Knight LLP<br>31 West 52nd Street<br>New York, NY 10019<br>212-513-3200<br>Email: sean.sheely@hklaw.com<br>Email: duvol.thompson@hklaw.com<br><br>D. Erik Albright<br>Gregory G. Holland<br>Smith Moore Leatherwood<br>300 N. Greene Street, Ste. 1400<br>Grensboro, NC 27401<br>336-378-5200<br>Email: erik.albright@smithmoorelaw.com<br>Email: greg.holland@smithmoorelaw.com<br><br>Jonathan Heyl<br>Robert R. Marcus<br>Smith Moore Leatherwood<br>101 N. Tryon St.<br>Suite 1300<br>Charlotte, NC 28246<br>704-384-2600<br>Email: jon.heyl@smithmoorelaw.com<br>Email: rob.marcus@smithmoorelaw.com<br><br>*Counsel for Defendant Atlantic Coast Conference* | Leane K. Capps<br>Polsinelli PC<br>2501 N. Harwood St.<br>Suite 1900<br>Dallas, TX 75201<br>214-397-0030<br>Email: lcapps@polsinelli.com<br><br>Matthew P. O'Malley<br>Tompkins, McGuire, Wachenfeld & Barry, LLP<br>Four Gateway Center, Fifth Fl.<br>100 Mulberry Street<br>Newark, NJ 07102<br>973-622-3000<br>Email: momalley@tompkinsmcguire.com<br><br>*Counsel for Defendant Big Twelve Conference* |

I hereby certify under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

DATED:       April 10, 2014               **WINSTON & STRAWN LLP**

*Counsel for Plaintiffs*
*Martin Jenkins, Johnathan Moore, Kevin*
*Perry, and William Tyndall*

By:   /s/ Jeffrey L. Kessler_____
      Jeffrey L. Kessler
      WINSTON & STRAWN LLP
      200 Park Avenue
      New York, NY 10166
      T: (212) 294-6700
      F: (212) 294-4700
      jkessler@winston.com

21